2009 VT 26

**Lisa OVITT, Individually, Parent/Guardian of Brittany Ovitt v. AMERICAN HOME ASSURANCE COMPANY, Concord General Mutual Insurance Co., et al.**

[971 A.2d 662]

No. 08-377

¶ 1. March 11, 2009. Plaintiffs appeal from a superior court order denying them an award of attorney's fees from plaintiff Lisa Ovitt's automobile insurance company. We affirm.

¶ 2. In 2002, an underinsured motorist (UIM) collided with a school bus in which plaintiff Brittany Ovitt, a minor at the time of the accident, was riding. Brittany suffered injuries in the collision, and her mother, plaintiff Lisa Ovitt, filed a claim under her automobile liability insurance

---

policy with defendant Concord General Mutual Insurance Company to pay for some of the medical care Brittany required for her injuries. Concord paid plaintiff $5,000 on her claim, which was the limit of the medical payments coverage under plaintiff's policy. Plaintiffs subsequently sued Concord (plaintiffs' own UIM insurer), the school bus parent company, American Home Assurance Company (the UIM insurer of the school bus company), and the administrator of the underinsured motorist's estate for the injuries Brittany Ovitt suffered in the collision.

¶ 3. Pending trial, Concord successfully cross-claimed for a declaratory judgment against American Home, in which the superior court specified that, should plaintiffs establish that they were owed a judgment from both American Home and Concord, the judgment would be satisfied first out of American Home's UIM policy. Plaintiffs took no position regarding Concord's cross-claim or the order of payors. After a jury trial, plaintiffs were awarded a $205,400 judgment. Pursuant to the earlier declaratory judgment ruling, American Home paid for the first $100,000 of the award, the full coverage allowed by its UIM policy, and Concord was responsible for the $105,400 balance of the judgment.

¶ 4. American Home paid its share of the judgment while plaintiffs and Concord disputed several issues related to the total amount Concord owed after judgment was entered. To resolve the disputes, Concord moved the superior court to clarify the judgment order. The only issue relevant here is whether Concord was entitled to credit its portion of the judgment by the full amount of the $5,000 it previously paid on Lisa Ovitt's claim for medical payments under her liability policy with Concord. Relying on the "common fund doctrine," under which a party who benefits from a common fund created by the litigation efforts of another must pay a proportional share of the litigating party's attorney's fees, plaintiffs contended that Concord must reduce the offset by one-third to pay for the attorney's fees plaintiffs incurred in prosecuting their lawsuit. Following a hearing, the court ruled that Concord received no benefit from plaintiffs' litigation and was entitled to offset the amount it owed plaintiff by the full $5,000.

¶ 5. On appeal, plaintiffs assert that Concord owes them one-third of the $5,000 offset as reimbursement for the attorney's fees plaintiffs incurred in the successful prosecution of their lawsuit. We follow the so-called American Rule regarding attorney's fees, which provides that attorney's fees are "ordinarily unrecoverable in the absence of statutory authority or the parties' contractual provision concerning this expense." *Robes v. Town of Hartford*, 161 Vt. 187, 198, 636 A.2d 342, 349 (1993). In this case, there is neither statutory authority nor a contractual provision for attorney's fees. Nevertheless, plaintiffs urge us to apply the common-fund doctrine, one of the "judicially created equitable exceptions" to the American Rule. *Guiel v. Allstate Ins. Co.*, 170 Vt. 464, 468, 756 A.2d 777, 780 (2000). While it is true that "the trial court has discretion under its powers of equity to award attorney's fees," we note that "such deviation from the general rule is only justified in exceptional cases." *Grice v. Vermont Elec. Power Co.*, 2008 VT 64, ¶ 29, 184 Vt. 132, 956 A.2d 561. We agree with the trial court that this case is not one of those exceptions, and hold that the court did not abuse its discretion in refusing to reduce Concord's medical-pay offset by one-third to cover a portion of plaintiffs' attorney's fees.

¶ 6. The common-fund doctrine is generally applied when a party prevails in a lawsuit and the outcome creates a fund "that is intended to benefit not only [the party that brought the suit] but others as well." *Guiel*, 170 Vt. at 468, 756 A.2d at

780. The doctrine allows the prevailing party "to recover, either from the fund itself or directly from those others enjoying the benefit, a proportional share of the attorney's fees and costs incurred in the lawsuit." *Id.* In the context of insured-insurer lawsuits, we have held that, "under appropriate circumstances, the common fund doctrine may be applied to require an insurer to pay a proportionate share of the attorney's fees incurred by its insured in obtaining a judgment or settlement that satisfies the insurer's subrogated interest." *Id.* at 469, 756 A.2d at 781. Such a departure from the American Rule, however, "should be applied only after the trial court determines that it is equitable to do so because of the facts of the particular case at hand." *Id.* at 470, 756 A.2d at 781. Equities favor application of the common-fund doctrine when the plaintiff/insured's efforts to protect her own interests result in protecting the insurance company's interests, while the insurance company merely enjoys the benefits of the insured's work and legal fees without making its own contribution. See *id.* at 468-69, 756 A.2d at 780-81.

¶ 7. To illustrate why the superior court was well within its discretion in determining that plaintiffs' judgment conferred no benefit on Concord, and that there was thus no common fund created by the judgment, it is helpful to review the facts of *Guiel*, in which we determined that there was a common fund and an associated benefit to the insurer. That case involved four parties: a plaintiff who was injured in an automobile accident, her insurance company, the company who owned the other vehicle in the accident, and that company's insurer. After the accident, the plaintiff's insurance company made medical payments to plaintiff, but also notified the other insurer that it was entitled to subrogation of any payments it made to the plaintiff as a result of the accident. In other words, the plaintiff's insurance company had the right to pursue the claims that the plaintiff had made to it against the party responsible for the plaintiff's injuries. The plaintiff eventually filed a negligence action against the company owning the other vehicle, invested close to two years in preparing for trial, then settled with the company. The settlement expressly provided for the full amount of the medical payments that the plaintiff's insurance company had made to the plaintiff. After reaching this settlement, the plaintiff filed a declaratory judgment action in which she asked the superior court to reduce her insurer's recovery of the medical payments by her attorney's one-third contingency fee and other expenses she incurred leading up to the settlement. The superior court applied the common-fund doctrine to justify the award of the attorney's fees, and we affirmed.

¶ 8. This case involves an entirely different set of relationships between the parties. Here, American Home is not the insurer of the tortfeasor, Concord had no subrogated interest in plaintiffs' claims against American Home, and Concord was a defendant in the lawsuit filed by plaintiffs. Far from sitting back and enjoying the fruits of plaintiffs' labor against American Home and the other defendants, Concord was actively engaged in its own defense against plaintiffs. But most importantly, plaintiffs have not shown how their lawsuit has conferred any benefit on Concord with respect to its $5,000 medical payment. Concord is not, as a result of this judgment, getting back the $5,000 it already paid plaintiffs; instead, it is simply claiming credit against a $105,400 judgment for $5,000 already paid. Concord is in the same position with respect to the $5,000 that it was in after it paid plaintiffs under the medical payments coverage provision of their insurance policy and before this lawsuit was initiated — the $5,000 remains in plaintiffs' possession. Absent any benefit to Concord, it is senseless to suggest

that Concord should pay attorney's fees to plaintiffs. There are simply no equities that favor plaintiffs' receipt of attorney's fees from Concord.

*Affirmed.*